Your Honor, this matter essentially involves the bank being brought into litigation. It arises from several litigations involving the Tracy family. The bank was involved in litigation, which was the second of two matters, the first one being a much more significant arbitration in the state of Michigan and the second case being in the district court in Los Angeles. Counsel, let me ask, from the standpoint of Bank One, what dollars do you think are at stake? Is it the difference between your settlement where you took 90% and what would be 100% or is there anything more than that involved? It sounds like about $35,000 or so to me. Well, that's not what we think, Your Honor. We think that the amount at stake is the difference between what we asked for in the trial court and the amount we settled for with Tracy Industries. So the difference would be $200,000, roughly. I think it's $204,000. You accepted that payment and settled with them. Yes. And you didn't appeal that judgment. And the district court at that point told you what they thought your services were worth. Yes. So I don't see how, I'm trying to think this through, but I don't see how you can claim anything more than whatever is between 90% and 100% at most. Well, the way we see it, Your Honor, is this, that we have two joint obligors on a joint and several obligation, that we were entitled to collect the whole as against both. But you were told by the district court that your reasonable fees were a much lesser amount than what you claimed. That's right. And we believe that we were entitled to more than the reasonable. Did you appeal that? Yes, we did. Now, where do I find that? Well, we filed the notice of appeal as to the entire attorney's fees award, both as to the amount of the fees. Well, I think the entire attorney's fees award. And so we were appealing that as to that judgment, that part of the judgment. But then you went ahead and settled. That's right. So if we were to agree with you that the court erred on the application of Michigan law to the amount calculation, you would then seek to collect the differential between what you recovered from Tracy against Alma, plus the increased amount, whatever the differential is, but not as against Tracy because of the settlement? That's right. So all the settlement did was cap Tracy's liability? That's right. But you left open the issue of the appeal amount. That's right. I mean, essentially this is, in our view, nothing different than we have two joint and several obligors. Can I – let me address that, see if I understand your theory correctly. Sure. The district court seemed to focus on Section 5, which is a fee-shifting provision, and then turned to Section 7, the indemnity provision, in articulating the court's theory of interpretation of the word all attorney fees. My reading of your papers was that you pled attorney fees under Section 7, which is an indemnity provision, joint and several, as you say, and that as an alternative. But I could be wrong because that's why I'm posing it this way. That as an alternative, you also claim that you could recover fees, although you seem to suggest against both Alma and Tracy, under the fee-shifting provision, which has among its somewhat confusing language to me the notion of a prevailing party. The district court, looking at Section 5, concluded that you weren't a prevailing party as against Alma, only as against Tracy, awarded the fees under that rubric and then mooted out the rest. As I understand your position, you're saying, no, under Section 7, we get an award against both entities and whatever under Section 7, and that until you get that adjudicated and liquidated as against Alma, there's no mootness and there's a live controversy, and the amount is relevant to that particular section. So having so summarized, if I've done that part right, what is the interplay in your position between Section 5 and Section 7? Right. And I'm not sure that you've summarized it correctly, so let me try. Sure. I don't know what the district court did, to be honest, because I don't think the district court's order is abundantly clear. It didn't precisely say how it awarded the fees under Section 5 or Section 7, although it may well have done what you suggested. The order's not clear, in my view. In my view, the interplay between the two sections basically is this. First of all, let me start by saying that the district court found that the parties to the agreement, basically Alma and Tracy prepared the agreement, Bank 1 didn't prepare the agreement, and the district court made that finding. So if there's any uncertainty between the agreement or ambiguity in the agreement, it's not construed against the bank. It's construed against the parties that prepared the agreement. Second, I believe that the agreement has to be read in the following manner. The paragraph 5, I think, is a paragraph that really deals, I think, with the situation of an interpleader, that in the event that there is a situation where there is a claim against dollars being held by the bank or the escrow, that the bank, that we're talking about an interpleader kind of situation, because if you look at the language in that section, it talks about the bank being faced with the choice to defend or not defend as it chooses. And then Section 7 talks about litigation against the bank precisely and talks about attorney's fees. Section 5 doesn't even mention the word attorney's fees or the language attorney's fees. And you have to read those two provisions in a way to give sense to both of them, which is common, you know, first-year contract law. And so you have to look at the language of both of them to give meaning to both of them. And I think that's the way you look at the language of those two provisions, to give meaning to paragraph 5 and give meaning to paragraph 7. That 5 is an interpleader-type section, and 7 is the provision that deals with litigation directly against the bank and the bank defending itself. And so if you look at it that way, and I think that's the only way you can look at it, Section 7 is the provision that deals with the situation that we're faced with, with the bank defending itself. And then we look at the situation. What does Section 7 provide? It says that the bank is entitled to all of its fees. Well, it's entitled to reasonable fees. It's not entitled to all that it claims necessarily. Well, I, with all respect, I beg to differ with you, because the language of 7 says all of its fees, and the one Michigan case. No, it really doesn't. It says all costs and expenses, comma, including fees. So I read the all as modifying costs and expenses, which among which may be attorney's fees. Well, it says all losses, costs, and expenses, comma, including attorney's fees. Well, I was pretty close. I missed one word in there. But my real point is what the all has to do with, and to me it has to do with the all costs and expenses, among which are attorney's fees. That's right. But that doesn't say that you get all attorney's fees that you ask for. It's very different from Michigan cases which say actual fees, because this agreement doesn't say actual fees. Well, that's the question. And obviously the Court doesn't sound like it's agreeing with me. I think it does say that. I mean, I, you know, I think that the word all in there is meant to modify the words losses, costs, expenses, and then it says including attorney's fees. And so you can't argue to this Court that you're entitled to more than reasonable attorney's fees, are you? Well, I am, Your Honor. I am. And the reason is, as that Michigan case talks about, that there are instances when you get reasonable fees and there are instances when you get actual fees. And remember the situation that we're faced with here. We're faced with a situation where the bank performed ministerial duties only. It charged a fee, I think, of $7,000 and some odd dollars to do that. And the idea was that it was going to do very little work and not be put in a situation where it was going to go out of pocket to do that work. And we're talking about a situation then where an escrow company in a corporate estate kind of situation would then be faced with dramatically increasing its rates for these kind of services if it's faced with the possibility of going out of pocket. If it really performs its duties in a way where it did nothing wrong. It did nothing wrong. And that's what the Court found. It met that standard of not being in bad faith and not being grossly negligent. And it's risk-sharing. We can accept all that, counsel, but still you can't charge outrageous attorney's fees. But is that what happened? Remember the evidence that was in front of the trial court. The district court determined what were reasonable fees. And at most we would review that on an abuse of discretion standard. Well, I understand. And I understand we haven't got there yet. But this was meant, I submit, to make sure that the bank was made whole, that the bank didn't go out of pocket, in recognition of the fact that the bank was charging a very, very minimal fee to perform relatively limited services. A bank's not going to undertake this under any other circumstances. That's how this whole escrow system works. Otherwise, the whole rate structure is going to dramatically change if that escrow runs the risk of suffering a large out-of-pocket expense. Forget the numbers here. If it runs the risk of suffering any out-of-pocket expense, if courts are going to review the costs in a critical secondary review, I mean, you understand the point that I'm making. And I think it's a very forceful point. Would you be making the same pitch that you were just making to Judge Fletcher if the district court had not relied on the survey to fairly substantially reduce the amount of the fee sought? Well, sure I would. I'd be making the same point. I mean, the point might be, and we haven't got to the abuse of discretion point. Okay. Would you disagree if the district court looked at your computer printout and said, well, this is duplicate of time, or this is time that actually got entered on this case when it was in reality spent on another case? Would you have a problem with that? Well, no. Logically, I shouldn't. If the court looked at that and said, hey, wait a minute. There's something wrong with your bills. It's for the wrong case. Of course, that's something different. All right. So basically, that's what you're saying. But that's not actual fees. If there's duplicate fees or it's the wrong bills, that's not actual fees. Yeah. I understand that. So that doesn't meet the other standard. That doesn't meet the true standard. Your agreement doesn't say actual fees. It says all fees. That's not even fees for the case. Okay. That's not even fees for the case. So if they're true fees for the case, I mean, you know, I think it is a legitimate policy issue going to the true heart of what escrows do, not only in the corporate escrow arena, but in the real estate escrow arena and everywhere else. They need to be made whole. Otherwise, the whole system of the charges that they charge has to be re-evaluated. And I realize, you know, I'm one attorney in one case saying that, but I think the point I'm making is a valid one. Now, I do need to jump a second, I guess, and talk about the whole abuse of discretion notion. You know, I think the court applied the wrong standard by not looking at the fees charged in the locality. I think the court looked at evidence that's not admissible. You know, talking about evidence that was taken off of the Internet is hearsay. There's no foundation. That was the evidence that the court looked at to make the decision. And I think the court rejected evidence to which nobody objected to. Yeah, well, even if that's right, then the remedy is to send it back. But the problem then is to say you send it back to look at what is reasonable or you send it back and just say, never mind all that. Just give it to them. Write them out a check. Well, I think there was no ---- And how do you distinguish reasonable not duplicated from reasonable reasonable? Well, the fact is that on the record before the trial court, the evidence on the opposite side, which, by the way, came from Tracy, the Alma submitted no evidence and did not object to our evidence. Because they aren't expecting to pay. Well, that may be, but we filed a motion against them. So maybe they should have expected to pay. Go back up to Tracy. But, you know, the motion was directed to Alma. We didn't file a motion to, I guess we didn't file a motion to Tracy. I take that back. But I think, you know, I think the fact is that the evidence is there. It's unobjected to from our side. And so there really isn't much to be done at this point. Under an actual, let's take an actual attorney fee regime, I take it your position is that that does not mean that the law firm or the client can simply put forward whatever it decides at whatever outrageous or at least ministerially provable arithmetical errors. But let's suppose that reasonable connotes or brings in the regime that one gets into in setting fee awards, typically in a fee shifting, but maybe under contract as well. But the contracts that I'm familiar with, anyway, usually say unreasonable attorney fees. So what I'm trying to understand is if we were to try to address Michigan law, which I understand this case is governed by, under the Michigan law structure, if you're talking about actual attorney fees, is there room in that regime, if you know, for dealing with what Judge Reimer said, that is a clearly obvious error in billing, or where let's suppose that the bank decided to use this as a training device and sent its two youngest in-house associates along with a couple of outside Pillsbury lawyers or whatever. So you had four lawyers sitting at a deposition, and then you put all that in and say, well, it's all attorney fees. Is there, under the Michigan regime, any opportunity to attack that? And honestly, I don't know the answer, because I don't think there's a Michigan case that deals with that. But fortunately, we don't have that situation. And I think when we deal with all our actual, there are bounds. And the reason there's bounds is this, because the bank is paying the fees as we go, not, you know, under their fee agreement with us, not knowing if they're going to win or lose. And so they have a fee agreement. They're paying it. They're being billed. They're paying the fees as they go. And so that bounds it, if you will. They weren't billing with, as you're positing, in-house fees. I wasn't suggesting. I'm just trying to figure out where the money is. No, understood. And I think if you've got something like that, I don't know what the Michigan courts would do. I don't, there's no case that deals with that, frankly, one way or the other. The issue hasn't been raised. And frankly, there's practically no case that deals with the actual attorney's fees in Michigan. So they haven't gotten to the kinds of, you know, potential abuse that you're talking about. And so there's just nothing there. I'd like to reserve just the last couple of minutes that I have, Your Honor. Surely. All right. Good morning, Your Honors. May it please the Court, my name is Tina Varjian, and I'm appearing on behalf of Appelli and Appellant Alma Products, Inc. And have you divided your time with the counsel for Tracy? You mean counsel for the three individual shareholders? Yeah. And have the two of you divided your time, is my question. We have not. You have not? We have not. You only have 20 minutes. That's fine. Between the two of you. That's fine. I'm not going to be writing her coattails in the main. I already have a list of notes. Okay. Well, just the real point here is that you've got 20 minutes, both of you. So if it's gone, it's gone. Thank you, Your Honor, for clarifying that. I would like to point out that I think, Your Honors, we're pointing out some key and wise key issues and made some wise comments regarding the interpretation of this escrow agreement. And doesn't Section 7 plainly say that the bank is entitled to recover indemnification and hold harmless from both parties, which would be Alma and Tracy? Yes, it does, Your Honor. Okay. And the key issue here is, as far as the attorney's fees go, what Bank One is entitled to. And when you look at the amount. But you're conceding against whom the district court erred in mooting out the claim because there is clearly an entitlement and the Bank One's entitled to a judgment of the district court saying that attorney fees are recoverable under Section 7 against both signatories to the escrow agreement, which is both Tracy and Alma. Correct? Well, Your Honor, I would disagree. And then we get to the amount. I would disagree because when you take into consideration both Section 5 and Section 7. Could you explain that? That would be very helpful. Sure. When you take into consideration both Section 5 and Section 7, as you would have to when you're dealing with interpreting of any agreement and looking at all the provisions, I believe they go hand in hand. One has to do with the disputes that arise, Section 5 specifically, disputes that arise with respect between buyer or the company to the reserve amount or the escrowed funds or the duties of the escrow agent. Right. Shall be resolved in accordance with the terms of the purchase agreement, which means it goes to an arbitration. Right? Well, and to which the bank isn't a party either. Correct. And then it says except to otherwise provided for in this escrow agreement. That's the lead-in. Right? Correct. And then you go over to Section 7, and it says, concerning the escrow agent notwithstanding any provision contained herein to the contrary, and then 8, the parties agree that the bank is indemnified and saved harmless by the parties hereto from all losses, costs, expenses, including attorney fees, which may be incurred by it as a result of its involvement in any litigation arising from the performance of its duties hereunder. So provided that, and then there's the exception, which the district court found did not preclude their reliance on this section. So how do you get the ---- Basically what I think, I think it was advanced by Bank 1 that both these sections apply. The district court, in ruling that Bank 1 was the prevailing party, was utilizing Section 5 when it awarded the attorney's fees, but also mentioned Section 7 that Bank 1 was entitled to its attorney's fees under that section also. Well, my question is, are you, what are you, we know what the court did, but I'm trying to understand is, do you disagree with the proposition that under Section 7, Bank 1 is entitled to indemnification, which includes attorney fees, we'll get to the amount, from both parties, Alma and Tracy? No, Your Honor. That's what the contract does say. Okay. The issue here is when you read Section 7, and what has been discussed earlier, what that section reads as far as what Bank 1 is entitled to. Is it entitled to, it doesn't say here anything about actual, and that is what Bank 1 continues to argue. It doesn't say reasonable attorney fees. It does not say reasonable attorney fees. However, when you look at the case law, Michigan case law, and what that states, and in all the interpretations of the different kinds of facts that may be different to each of the cases that we have cited, attorney's fees pursuant to a contract, when you, and I'm going to read from a case that I cited, K. Redfern. The court had stated that the general rule stated in the encyclopedia that indemnity is entitled to recover as part of the damages reasonable attorney's fees. Now, we're dealing with Section 7, which is an indemnity provision. Is that case referring to the general concept of indemnity, or is it talking about a contract of indemnity? It is talking. Bank 1's argument, just because I don't have that case in front of me, Bank 1 is saying a contract, that's what they're suing under, a contract which is a contract of indemnity. Is what you're reading, interpreting, putting a gloss on what a contract of indemnity says, or just generally, like in your case, if you're seeking indemnity over under principles of equitable indemnity, you might be able to recover under that general rubric reasonable attorney fees as part of it, but that wouldn't be based on contract. That would be based on general equitable principle. Yes, I understand your distinction. Thank you. This particular case dealt with an indemnity agreement. Okay. An express indemnity agreement. And under that, they concluded that they were entitled to reasonable attorney's fees. See, I guess I have a slightly different take on it. I'm not – I'm much less troubled about whether it's all actual or whatever than I am by the district court's view of what reasonableness means. I think if you say all or actual, you still have got some degree of reasonableness analysis. That is, you can't have duplication and you couldn't have, you know, just plain goofs. But the district court here relied on a survey, a national survey that's totally without foundation, didn't rule on the objection, and is worthless. So it seems to me that the argument about all or actual is – has got – I mean, this whole attorney's fees issue has got to go back, basically. Well, Your Honor, are you asserting that you have no obligations of indemnity? No, Your Honor. That's not what we're asserting. We're asserting basically that Tracy Industries, as signatory to that indemnity agreement, Bank One was – it was concluded that Bank One was the prevailing party in that action that was brought by Tracy Industries. The court had determined that, pursuant to this escrow agreement, that Tracy Industries owed Bank One the attorney's fees under that agreement. That the court also ruled that they were entitled to only the reasonable attorney's fees and took into some consideration different factors, one of which was the survey. And based on that, ruled that it was only entitled to the amount that it was entitled to, which was $374,000. It is out of product's position that the court did not abuse its discretion when it found that those fees were reasonable. How can you not abuse your discretion when you rely on a survey that has nothing whatsoever to do with the fees that are charged in the relevant community, whether that be Michigan or Southern California, and that has an objection outstanding that hasn't been ruled on and that has no foundation? I mean, we don't know who conducted the survey or why or when or how it did or what its methodology was or anything. I don't believe that that was all the factors that he took into consideration. Well, but that's enough. And that was what the district court said. I mean, and it used the number that was whatever this national average was, which certainly has nothing to do with the average attorney's fees charged in Southern California, or I doubt in Michigan either. Right. We're utilizing Michigan law here. Well, no, Michigan law, but the relevant community is Los Angeles, I assume. Well, Your Honor, I don't know if Bank One has pointed out to any authority on that point. Okay. Just let's focus in on my main concern. Given the objected-to survey that wasn't ruled on and it wasn't authenticated and had no foundation, doesn't this have to go back anyway? I take it you think no, but tell me why. Well, I think no, because I don't, I think that the, there was no abuse of discretion in how the judge took these factors, took the survey according to Michigan law and what the court needs to do to evaluate the attorney's fees. And the court so cited in its October, I should say September 25th, 2003, order of all the factors that it can consider under Michigan law. Okay. Let me go back and reframe the question that Judge Fisher started with, because I want to be sure I understand exactly what your position is, because I now don't. Do you agree that Bank One's claim is not moot? No, Your Honor, we believe it is moot. Okay. So, yeah, well, exactly. So that's, all right. Then explain why, because I don't understand the district court's ruling that the complaint is moot, because it seems to me plain on the face of the agreement under Section 7 that Bank One has an indemnity claim against both Alma and Tracy. Well, Your Honor, the fact of the matter is that the court, in ruling as it did, was concentrating on the fact that being that Tracy Industries was a party to this escrow agreement, if there's joint and several liability, joint and several liability would be applied to Tracy Industries. That is several. That is several. And what I understand the district court to have done when it ruled was probably thinking that if the indemnitor, excuse me, the indemnity, which is Bank One, wins its claim in the contest with Tracy, that it then has nothing to get indemnity for. And so it moots the rest of the claims. And in many situations that would be true. But here it has an express indemnity agreement with both of you. So how could it be moot? Let me add just kind of a hypothetical that might help to clear this up. Let's assume that Tracy was bankrupt and couldn't pay anything. Nobody disputes the amount of the attorney's fees. Could they, Bank One could certainly turn to Alma to collect it under the indemnity agreement. Could it not? I suppose it could, Your Honor. So I don't see how this can now be moot. There may be some questions that in the settlement that Bank One made with Tracy, not to dispute the amount or to appeal it as to them, that I don't know whether Alma was consulted, whether there was a duty to consult. There are those issues out there. But I don't see how it's moot. Well, Your Honor, as far as the mootness goes, the judgment was satisfied by Tracy Industries. That's after, well, whatever happened, that happened after the district judge ruled that there was mootness. That may be a different ground for mootness. We can't, I mean, that wasn't the district court's reason. The bottom line was the district court found that these fees were reasonable. It was going to go after the moot. Are you arguing somehow along the line that Judge Reimer advanced, which is that having found against Tracy so that it would fit within the rubric of prevailing party, the bank would fit as vis-a-vis Tracy in the position of a prevailing party. Having done that, he didn't need to reach anything about Alma and to address Judge Fletcher's situation. If Tracy turns out unable to satisfy the judgment against it, then Bank One has a new action that it could file against Alma to come after it to honor the obligation that was imposed on Tracy. But the Tracy in the hypothetical can't. That is a potential. Is that your theory or is that just something? No, that is not our theory. Okay, fine. You don't need to pursue it further. No, that's not our theory. I see my time is quickly running out. You may want to give the balance of your time to Mr. Shulman. I will. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, George Shulman for the shareholders' representatives. Some observations here. Bank One did not seek indemnity from Tracy Industries. It did not file a cross-complaint for indemnity. That's the importance of Section 5 of the agreement. That's why they had to get their fees under prevailing party analysis. It's only sought contractual indemnity from Alma Products. Is there something we're supposed to get from that? We argued below that the Section 5 related to precisely this situation. It doesn't. Whatever they did with respect to Tracy, they've got a Section 7 right to indemnity from Alma, don't they? Alma seems to conceive that, although also arguing that it's moot. And from Tracy. And from Tracy also. But arguing that Judge Plowsner is correct, that the case is moot, no argument's been made about their equitable indemnity claim against my clients, which was also dismissed as moot. Well, I know, but if yours can't be moot if theirs isn't moot, I mean, it's just all back in the hopper, and somebody's got to go back and sort it all out from day one, which is what I think. Now, why am I wrong? Well, Bank One did not need, and I think that the district court recognized, although perhaps it's not in its reasoning, Bank One did not need to sue anybody. It got sued by Tracy Industries. All it needed to do was defend. If Bank One was grossly negligent, it was going to lose, and it would owe obligations to Tracy and would have no recourse against anybody else. Yes, I understand. If Bank One won against Tracy, it would be fully compensated by Tracy, and it was never going to need to seek indemnity. And I think what the district court realized in relegating Alma and my clients to a back table and not really letting us participate at all in the trial was that we were superfluous to this case, that the entire case turned around whether Bank One was grossly negligent or not. The district court correctly decided that Bank One was not grossly negligent. Bank One prevailed. It got an award of its reasonable attorney's fees. It didn't have the right to run the clock out endlessly. I want to talk about what evidence the district court had in addition to what we've discussed already. And it got its award of reasonable attorney's fees, and then it compromised and took the full value of its compromise. So the party that's at risk, Tracy Industries, is not here anymore, not at risk anymore. Yes, see, the difficulty is at the time the district court said that the complaint, the claim was moved, there was an attorney's fees claim of $541,148.30 on the table. That's when the district court said it was moved. I don't get that. It was moved. Actually, Judge Reimer, the district court said that the case was moved at the close of the trial, after it had ruled on Tracy Industries, where there was no attorney's fees claim on the table at all. We later had the motions for attorney's fees. That's what this whole thing's about. I understand that, but the motions for attorney's fees had not yet been made when the district court made its mootness determination. The specific amount hadn't been made, but that's what this whole fight is about, is about a reimbursement for attorney's fees. That's the only thing it's about. That's correct. But when we got the amounts in, one of the other pieces of evidence that the district court had, because Alma was also seeking equitable indemnification against the shareholders' representatives, is that Alma's total legal fees were just shy of $200,000. My client's total legal fees were about $280,000, and Bank One's legal fees were $541,000, almost twice as much as my client's legal fees. But together, yours came up to $400,000. I'm sorry, Your Honor? Together, the two parties spent $400,000. We had to be at various things together. But so what? Doesn't this agreement, to boil it down simply, say that, look, the escrow holder's over here, and they have this Clause 7, which says if we're dragged in and we have to put lawyer fees into this thing because the duties of the trustee or the escrow holder are at issue, Section 7 says we look to you parties to hold us harmless and indemnify us. However you fight it out between the two of you is up to you. But for us as the bank, you guys are going to pay. And if we're dragged in and it's only because of one of you out there fighting but our duties are at issue, we can still, under Section 7, come after both of you. Whether or not one of you is even a party to that dispute, we can come after both of you. You guys are saying, we guarantee, Bank One, your attorney fees will be covered by one of us. And if it's one of us who wasn't even a party, then we can go after the other folks by way of our right of equitable indemnification or whatever. But you, Bank, you're taking care of it. Isn't that the way this agreement is structured? The way that we read it and we argued to the district court is that Section 5 deals with the situation where one of the parties to the escrow agreement, remember that my clients, the shareholders, the representatives, are not parties to this agreement at all. Tracy Industries and Elmer Products are the parties to the agreement. That's why my clients were not sued for express indemnification. But Section 5 deals with the prevailing party analysis when one of the parties to the agreement gets into a legal dispute with the bank. And Section 7 deals with the situation where the bank gets sued by somebody else and its costs are run up, as counsel for the bank has observed, and it lets the bank recover those costs from the participants to the escrow holder. That's the only way we see to read it. Otherwise, one of those sections is surplus. Okay. So you're drawing a distinction between you're the three shareholders? The shareholders, representatives. Representatives and Tracy Industries. You're not Tracy Industries. We are not Tracy Industries. So you're not party to the Section 7 agreement? Only Tracy Industries is a party to that agreement. At the time that that agreement was entered into, the shareholders' representatives did not exist. The agreement was entered into in 1999 having to do with the sale of a portion of the business of Tracy Industries. In 2000, the shareholders' representatives, I'm sorry, some of the shareholders of Tracy Industries sold their stock. But do you understand the bank is trying to get against the shareholder representatives? The bank has abandoned this claim against the shareholders' representatives. You're here because of Alma. Alma Products has an equitable indemnity claim against the shareholders' representatives. Not an express indemnity claim. They do not claim we're party to the agreement. Okay. I think we understand about as much of this as we're apt to understand today. And the time is way over. I very much appreciate the panel giving me the time. Thank you. All right. Thank you. Mr. Rubin? Did he have any time left? I can't remember. Yes. Very briefly, just a couple points. Paragraph 7 not only says express indemnity, but it also says hold harmless. And I think those words are meaningful in our context as well in terms of the full reimbursement of the bank. And we also need to remember that Alma, on many occasions, refused the tenders that the bank made. Alma had many instances where they could have come in and done something. There was a tender at the outset of the case. There were many tenders during the case. Remember also in these two consolidated appeals, Alma has taken inconsistent positions. In our appeal, they say it's moot. In the other appeal, they say it's not moot. One last point. The Redfern case, the counsel cited, although it is an indemnity contract case, the contract does not mention attorney's fees at all. The words attorney's fees aren't in that contract. So it's an entirely different case, has no applicability whatsoever to our situation. It's not at all close. The Cargus case is really the one case in Michigan that has any applicability. Thank you very much. Okay. Thank you, counsel. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Fisher